IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JULY 1999 SESSION

FILED

October 19, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No. 03C01-9811-CC-00384 |
| Appellee, | * | COCKE COUNTY |
| VS. | * | Hon. Ben W. Hooper, II, Judge |
| JIMMY THORNTON, | * | (Sale of Cocaine, Conspiracy to Deliver) |
| Appellant. | * | |

For Appellant:

Herbert S. Moncier
and David Wigler, Attorneys
Suite 775, Nations Bank Center
550 Main Avenue
Knoxville, TN  37902
(on appeal)

William Leibrock, Attorney
339 East Main Street
Newport, TN  37821

and

Richard Talley, Attorney
145 East Main Street
Dandridge, TN  37725
(at trial)

For Appellee:

Paul G. Summers
Attorney General & Reporter

Ellen H. Pollack
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN  37243

Charles Atchley, Jr.
Assistant District Attorney
125 Court Avenue, Suite 301-E
Sevierville, TN  37862

OPINION FILED:_____

REVERSED AND REMANDED

GARY R. WADE, PRESIDING JUDGE

## OPINION

The defendant, Jimmy Thornton, was convicted of two counts of sale of cocaine and two counts of conspiracy to sell cocaine. The trial court imposed a Range II sentence of twenty years on each count. Three of the four sentences are to be served consecutively; the effective sentence is, therefore, sixty years. Fines totaled $800,000.

In this appeal of right, the defendant presents the following issues for review:

> (I)  whether the evidence was sufficient to support the defendant's convictions for conspiracy to sell cocaine;
>
> (II)  whether the trial court erred by denying the defendant's motion for a mistrial based on improper argument made by the prosecuting attorney;
>
> (III)  whether the trial judge should have recused;
>
> (IV)  whether the trial court erred by denying the defendant's motion challenging the jury venire;
>
> (V)  whether the defendant is entitled to a new trial based on the rule against multiplicity;
>
> (VI)  whether the defendant has been subjected to double jeopardy and due process violations;
>
> (VII)  whether the trial court erroneously instructed the jury that the defendant could be found guilty if he acted recklessly;
>
> (VIII)  whether the trial court erred by instructing the jury on the range of punishment; and
>
> (IX)  whether the imposition of consecutive sentences was improper.

Because we find that the trial court erred in its instructions to the jury, we reverse the convictions and remand for a new trial.

On January 5, 1995, Tom Davidson, who was incarcerated in the Grainger County jail, made a telephone call to the defendant to arrange for the purchase of illegal drugs. Davidson had previously contacted Mike Hannan, an officer with the Tennessee Highway Patrol Criminal Investigation Division, and offered to assist in making purchases of illegal drugs in Cocke County. Davidson wished to assist law enforcement officials in an investigation of the defendant in order to get "out of the Grainger County Jail." He was also upset because the defendant had married his ex-wife. One day after his first call, Davidson made a second call to the defendant, who arranged for his son, Mark Thornton, to meet with Davidson for a cocaine transaction. The price for one ounce (27.3 grams) was set between $1,100 to $1,200. Each of the two telephone calls was recorded. On the following day, Davidson and an undercover agent, Tom Conner, purchased from the defendant's son 27.4 grams of cocaine for $1,300.

On January 10, 1995, Davidson and Agent Conner called the defendant and arranged a second cocaine purchase. The defendant directed that the two men meet his son, Mark, at the Wal-Mart parking lot in Newport and described the car that his son would be driving. As arranged, Mark Thornton delivered 53.4 grams of cocaine to Conner and Davidson for the price of $2,600.

The defendant, who has been blind since 1981, was indicted by the Cocke County Grand Jury for two counts of sale, two counts of delivery, and two counts of conspiracy to sell and deliver cocaine. After the trial judge rejected a plea agreement reached by the state and the defendant's trial counsel, the case proceeded to trial. The defendant was found guilty of all six offenses.

The trial court, which properly concluded that the two convictions for

3

sale of cocaine merged with the two convictions for delivery of cocaine, sentenced the defendant to twenty years for each of the four remaining counts. Because three of the counts were ordered to be served consecutively, the effective sentence was sixty years.

I

Initially, the defendant contends that the evidence was insufficient to sustain his conviction for conspiracy. Specifically, he claims that the state failed to prove that he personally delivered and sold cocaine as set forth in the indictment. He reasons that there was no evidence of an overt act, as required by law to support the convictions.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

The applicable statutes provide as follows:

It is an offense for a defendant to knowingly:
(1) Manufacture a controlled substance;
(2) Deliver a controlled substance;
(3) Sell a controlled substance; or
(4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

4

* * *

> The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-17-417; Tenn. Code Ann. § 39-12-103(a). The commission of an overt act in furtherance of the conspiracy is an essential element of the offense. Tenn. Code Ann. § 39-12-103(d); State v. Perkinson, 867 S.W.2d 1 (Tenn. Crim. App. 1992).

The defendant contends that because he is blind, no rational trier of fact could have found that he could deliver cocaine. The state disagrees.

"'Deliver' or 'delivery' means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Tenn. Code Ann. § 39-17-402(6). Because the defendant is blind, he might require assistance in an illegal drug transaction. Here, however, the evidence shows that the defendant orchestrated both transactions. He arranged the subsequent meetings between his son and the purchasers. Although the defendant directed that his son meet with Davidson and Agent Conner to exchange the cocaine and the money, there is ample evidence to conclude that, at a minimum, a constructive delivery took place. In our view, the evidence was sufficient.

II

The defendant next contends that the trial court erred by failing to declare a mistrial based on the following statements made by the prosecuting

5

attorney during closing argument:

> Ladies and gentlemen, when you came in we talked to you a little bit about burden of proof, and the fact that it was on me. And that I was going to have to show you what evidence that we had, and he had to assert no defense whatsoever if we didn't prove our case. Of course, if we did come in and show a case, it would certainly be to their benefit that they show some type of defense. <u>I submit to you, ladies and gentlemen, there has not been any defense asserted here whatsoever. . . . There is no defense, there is nothing to it</u>.

* * *

> Now they made a big deal about our crime lab, <u>which I'm very proud of our crime lab. They do an excellent job</u>. Firstly, [defense counsel] wants to know why there were no fingerprints on that? Ladies and gentlemen, that bag of cocaine went from the residence of Jimmy Thornton . . . to Mark Thornton, to Tom Davidson, to Tom Conner, to the TBI Crime Lab. <u>Why, there's more prints on that bag than this table</u>.

* * *

> I'm always flattered when somebody like [the defendant's trial counsel] says I come in here and beat up on them because, quite frankly, it's just me. <u>And I think it's rather ridiculous to think that I'm going to run over the top of two high priced, slick lawyers</u> . . . . Secondly, [defense counsel] wants to know what happened to the money. Well, I'd like to know where the money is too. I'd say it's probably everywhere. <u>I imagine Mr. Thornton spends a lot of money. I know he's got two expensive lawyers there</u>.

(emphasis added). Defense counsel objected only to the prosecuting attorney's statement that there were "more prints on that bag than this table." The failure to object to the other remarks results as a waiver on appeal. Tenn. R. App. P. 36(a).

In general, closing argument is subject to the trial court's discretion. Counsel for both the prosecution and the defense should be permitted wide latitude in arguing their cases to the jury. <u>State v. Bigbee</u>, 885 S.W.2d 797, 809 (Tenn. 1994). Arguments must be temperate, predicated on evidence introduced during

6

the trial, relevant to the issues being tried, and not otherwise improper under the facts or law. State v. Middlebrooks, 995 S.W.2d 550 (Tenn. 1999).

It is never proper for a prosecuting attorney to comment upon a defendant's decision not to testify. Griffin v. California, 380 U.S. 609. 615 S. Ct. 1229 (1995). To do so constitutes misconduct. Id. at 615. The ultimate test to determine if that misconduct is reversible error depends on whether it had a prejudicial effect upon the verdict. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758 (1965). In making that determination, courts must consider five factors:

> (1) the conduct complained of in light of the facts and circumstances of the case;
>
> (2) the curative measures undertaken;
>
> (3) the intent of the prosecutor in making the improper remarks;
>
> (4) the cumulative effect of the improper conduct and any other errors in the record;
>
> (5) the relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

In our view, the prosecuting attorney's comments regarding the defendant's failure to present a defense were not improper. Taken in context, the prosecuting attorney was referring only to the defendant's failure to refute the state's case, not to the defendant's failure to testify. It has long been established that a district attorney general may argue that the state's evidence is uncontradicted. This argument does not violate the rule prohibiting comments on the failure of the defendant to testify in support of his defense. State v. Rice, 638 S.W.2d 424 (Tenn. Crim. App. 1982). Furthermore, the jury instructions correctly stated the burden of proof and lessened any impact the prosecuting attorney's statements may have had. Moreover, the tape recorded evidence against the defendant made the

7

case particularly strong. Thus, even if the statements were improper, application of the factors set forth in Judge would lead us to the conclusion that the prosecutor's statements did not have a prejudicial affect upon the verdict.

The comments regarding the crime laboratory, to which no objection was made, were inappropriate. It is a violation of the Code of Professional Responsibility, DR 7-106(C)(4) for lawyers engaged in trial to express their personal opinion about any issue involved in the justice of the cause they represent. See State v. Hall, 976 S.W.2d 121 (Tenn. 1998). Certainly, a lawyer should not assert his or her personal opinion as to the credibility of a witness, or as to the accused's guilt or innocence. State v. Henley, 774 S.W.2d 908, 911 (Tenn. 1989). Whether a statement qualifies as misconduct often depends upon the specific terminology used. United States v. Stulga, 584 F.2d 142, 147 (6th Cir. 1978) (stating "The use of the words 'submit' are not the equivalent of expressing an opinion."). In this case, the prosecuting attorney essentially vouched for the effectiveness of the crime lab, stating that he was "very proud of our crime lab." He further stated that "[t]hey do an excellent job." There were no prefatory words, such as " submit," or qualifying terms, such as "In my view." Rather, the statement that the crime lab does "an excellent job," qualified as a personal opinion made before the jury and in contravention of the rule. The statements would not, however, constitute reversible error under the Judge test. Likewise, the statement of opinion by the prosecutor that "there's more prints on that bag than this table" was harmless in the context of the entire record of the trial.

The prosecutor's statements about the defendant's ability to pay "two high priced, slick lawyers" were improper. Generally, arguments calling attention to a defendant's wealth or means, ability to retain counsel, to pay counsel large fees,

8

or to finance his or her own defense, are highly prejudicial. State v. Norris, 874 S.W.2d 590 (Tenn. Crim. App. 1993). See also Goff v. Commonwealth, 241 Ky. 428, 44 S.W.2d 306, 308 (1931) (stating that a "reference to . . . the ability of the defendant to pay a fee was improper. The defendant was charged with murder, and not with being wealthy, and no reference should have been made to his station in life."). In Norris, the prosecuting attorney suggested that the jury should not let the defendant "buy his way out of the case." Id. at 598. Defense counsel lodged an objection which was overruled by the trial court. In that case, upon application of the Judge factors, this court concluded that the objection should have been sustained, but that the prosecutor's statement, while "improper and intemperate," was harmless beyond a reasonable doubt. Id. at 598-99. Had there been a contemporaneous objection to the snide remarks about defense counsel, the trial court would have likely admonished the prosecutor and provided curative instructions to the jury. But, such personal references usually tend to discredit, rather than serve, the cause of the state. By application of the Judge factors, particularly the relative strength of the state's case, we must conclude that the improper reference to defense counsel more than likely did not affect the verdict to the prejudice of the defendant. The following language from Norris cautions attorneys about the impropriety of such commentary:

> By not reversing this conviction for this improper argument, the court is concerned that lawyers will continue to make arguments ignoring appropriate rules governing final argument. Improper argument threatens the verdict. Both the Supreme Court of Tennessee and this court have reversed for improper argument. . . . The Supreme Court has suggested that offending argument should be the subject of disciplinary action against the lawyer . . . Still another court has suggested that disciplinary action would be far more effective than "the disapproving remarks in a score of appellate opinions. . . ." Suffice it to say that a lawyer is mistaken if he or she thinks that improper argument will not threaten the conviction or judgment or result in disciplinary sanctions against the offending lawyer.

9

Id. at 599 (citations and footnotes omitted).[1]

In reviewing the record as a whole, we cannot find that the cumulative effect of the prosecutor's improper argument warrants relief. The closing remarks made on behalf of the state did not rise to the level of prejudicial error.

III

The defendant next contends that the trial judge erred by failing to recuse himself. The defendant requested recusal just prior to the sentencing phase of the trial based on the trial judge's prior representation and personal knowledge of the defendant. At the sentencing hearing, the trial judge stated as follows:

> I may have represented Mr. Thornton in some of these convictions, or possibly the one that was not— did not come to a conviction, but I believe in '87 I may have represented him on a cocaine possessions charge. And that charge, I believe, Mr. Thornton, was actually placed on a Retired Docket in the General Sessions Court.

Additionally, the trial judge acknowledged having represented the defendant in a real estate matter and he recalled having recused himself in a divorce case because of his acquaintance with the defendant and his wife at that time. The trial judge also commented that he knew the defendant's mother, his children, and his step-father.

A trial judge should grant a motion to recuse if he or she has any doubt

---

[1] See State v. Donald Ray Middlebrooks, 995 S.W.2d 550 (Tenn. 1999):

> [I]n addition to any action taken by the appellate courts, the professional misconduct of prosecutors is more efficiently and authoritatively addressed at the trial level where courts are in a better position to view the conduct, assess its impact, and choose the appropriate action to ensure a fair trial. For example, the trial judge can order the cessation of offending statements and can give curative jury instructions. In egregious cases, the trial judge may sua sponte stop a prosecutor's prejudicial argument. In addition, the trial courts may consider direct sanctions to deter prosecutorial misconduct, including contempt citations, fines, and recommendations for disciplinary action to the Board of Professional Responsibility. We encourage the trial courts to consider these sanctions where the misconduct is flagrant.

as to his or her ability to preside impartially in a criminal case, or whenever he or she believes that his or her impartiality can reasonably be questioned. Lackey v. State, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978). Our supreme court has held that a judge is not disqualified from hearing a case because he or she has knowledge of the facts of a case. State ex rel Phillips v. Henderson, 220 Tenn. 701, 423 S.W.2d 489, 492 (1968). When a trial judge has no doubt of his or her ability to preside fairly over the matters presented, there is no need to grant a motion for recusal. The decision to deny a motion for recusal will be upheld absent an abuse of discretion. Lackey v. State, 578 S.W.2d 101, 104 (Tenn. Crim. App. 1978).

Here, there is no indication that the trial judge used confidential or privileged information in sentencing the defendant. It is not uncommon in a small community for trial judges to be acquainted with litigants. There must be more, however, before there is a legitimate basis for disqualification. In our view, the trial judge did not abuse his discretion in denying the defendant's motion for recusal. Furthermore, the proper time for the defendant to raise the issue of recusal would have been pre-trial, not prior to sentencing. The record suggests that the defendant was well aware of his previous contacts with the judge before the trial began. "[I]f the facts are known to the party recusing, he is bound to make his objection before issue joined, and before the trial is commenced, otherwise he will be deemed to have waived the objection. . . .'" Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997) (quoting Holmes v. Eason, 76 Tenn. 754 (1882)). Having received an unfavorable verdict, a defendant should not be allowed to mount a belated attack on the impartiality of the judge at the sentencing phase. See State v. Dustin Dwayne Davis, No. 03C01-9712-CR-00543, slip op. at 6 (Tenn. Crim. App., at Knoxville, March 15, 1999). By holding otherwise, "'the parties would be allowed to experiment with the court by tacit acquiescence, and raise the objection when the

11

result of the trial proved to be unfavorable.'" Thompson, 958 S.W.2d at 172 (citing Holmes v. Eason, 76 Tenn. 754 (1882)).

IV

Next, the defendant claims that the trial court erred by refusing to uphold his challenge to the jury venire. He asserts that immediately after the state completed its questioning of the jury, defense counsel asked the trial court to strike the entire jury because they had heard that the defendant's co-conspirator, Mark Thornton, had made an "agreement" in his case. The record is not clear who made the statement. There is no transcript of the proceedings during which the jury might have heard the reference to Mark Thornton. When defense counsel raised the issue, the trial court adjourned to play the audio tape of the proceedings to determine precisely what was said and what, if any, effect that statement would have upon the members of the jury. The trial judge concluded that "[t]he only thing that was said was that there was 'an agreement' in the case. We were sounding the Docket. Nothing to indicate at all what the agreement was. . . . The Court sees absolutely nothing in that statement that would be prejudicial to this defendant." In the absence of the tape or a transcript of the proceedings, we must presume that the trial court's conclusion was correct. Smith v. State, 584 S.W.2d 811, 812 (Tenn. Crim. App. 1979).

V

The defendant next contends that the two indictments, each of which charged one count of sale of cocaine and one count of delivery of cocaine, violated the "rule against multiplicity." "Multiplicity is the term applied to the improper charging of the same offense in more than one count." State v. Desirey, 909 S.W.2d 20 (Tenn. Crim. App. 1995). The rule against multiplicity in indictments is

12

designed to assure that criminal defendants will not receive multiple sentences for a single offense. State v. Young, 904 S.W.2d 603, 606 (Tenn. 1995).

The defendant alleges that the indictment, which divided the sale and delivery offense contained in Tenn. Code Ann. § 39-17-417 into separate charges, created a psychological effect on the jury by suggesting that he had engaged in more criminal activity than the state could prove. Clearly, the law precludes convictions for both the sale and delivery of illegal drugs. See, e.g., State v. Willie B. Jackson, No. 01C01-7902-CR-00054 (Tenn. Crim. App., at Nashville, Apr. 23, 1998). The defendant could have been found guilty of only four offenses. In such cases, the correct remedy is to set aside the inappropriate convictions. Here, the trial court did so. Absent harm to the defendant, he is not entitled to a new trial on the two convictions for sale of cocaine.

VI

The defendant's challenge to his conviction on double jeopardy grounds can be stated as follows: because he is blind, he necessarily requires the assistance and cooperation of another person to sell or deliver cocaine. He argues that a conviction for conspiracy under those circumstances would violate the double jeopardy clauses of the United States and Tennessee Constitutions. The defendant also contends that convictions for both conspiracy and the sale or delivery of cocaine violate due process. The defendant submits that the state's theory of sale, which was based on a constructive delivery, should not permit an additional conviction for conspiracy, an offense which also requires the participation of another. In our assessment, the defendant's convictions for the substantive drug offenses and the conspiracies to commit those offenses are not the "same offense" under either a double jeopardy or a due process analysis.

13

"[T]hree fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. . . . The key issue in multiple punishment cases is legislative intent." State v. Denton, 938 S.W.2d 373, 378-79 (Tenn. 1996). In Denton, the defendant was convicted of aggravated assault, attempted voluntary manslaughter, and carrying a weapon. Our supreme court reversed the defendant's convictions for both possession of a weapon and attempted voluntary manslaughter, holding that only one of the convictions could be sustained. The court examined the statutory language of each offense and concluded that the weapons charge was a lesser included offense of aggravated assault and that the same evidence was required for conviction of both aggravated assault and attempted voluntary manslaughter.

In determining whether two offenses are the "same" for double jeopardy purposes, the following test applies:

> [W]here the same act or transaction constitutes a
> violation of two distinct statutory provisions, the test to be
> applied to determine whether there are two offenses or
> only one is whether each provision requires proof of an
> additional fact which the other does not.

Blockburger v. United States, 284 U.S. 299, 307, 52 S. Ct. 180, 182 (1932).

The Blockburger test, however, "is not conclusive." Denton, 928 S.W.2d at 379. Courts should also consider whether the same evidence is used to prove both offenses. In Duchac v. State, 505 S.W.2d 237 (Tenn. 1973), our supreme court stated the rule as follows:

> One test of identity of offenses is whether the same
> evidence is required to prove them. If the same evidence
> is not required, then the fact that both charges relate to,
> and grow out of, one transaction, does not make a single
> offense where two are defined by the statutes.

14

Denton, 938 S.W.2d at 380 (quoting Duchac, 505 S.W.2d at 239).

Finally, courts should examine other factors relative to legislative intent:

> (1) whether there were multiple victims involved;
> (2) whether several discrete acts were involved; and
> (3) whether the evil at which each offense is directed is the same or different.

Denton, 938 S.W.2d at 381 (footnote omitted).

In our view, the offenses of delivering or selling cocaine and the offense of conspiracy to deliver or sell cocaine contain different elements. The applicable statutes provide as follows:

> It is an offense for a defendant to knowingly:
> (1) Manufacture a controlled substance;
> (2) Deliver a controlled substance;
> (3) Sell a controlled substance; or
> (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.
> * * *
> The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-17-417; Tenn. Code Ann. § 39-12-103(a).

An agreement is not an essential element of the offense of selling or delivering drugs. Similarly, the actual sale or delivery of drugs is not an element of the conspiracy offense. By applying the Blockburger test, Tennessee courts have consistently held that a defendant may be convicted of both conspiracy and the offense which is the object of the conspiracy without violating double jeopardy

15

principles.  See e.g., Turner v. State, 698 S.W.2d 90 (Tenn. Crim. App. 1990).

Application of the "same evidence test" also favors the state in this case.  In order to commit the offense of conspiracy, the state must prove that (1) each conspirator had the culpable mental state to commit the offense; (2) each conspirator must act for the purpose of promoting or facilitating the offense; and (3) at least one of the conspirators must commit an overt act in furtherance of the agreement.  Perkinson, 867 S.W.2d at 4.  In order to convict a defendant under Tenn. Code Ann. § 39-17-417(a), the state must prove that the defendant either knowingly sold or delivered a controlled substance.  Unlike conspiracy, there is no requirement that the State prove the existence of a prior agreement to commit the offense defined by Tenn. Code Ann. § 39-17-417(a).  The evidence presented by the state to convict the defendant of these crimes was not the same.

Finally, the statutes involved do not have similar legislative purposes. The purpose of the conspiracy statute is to deter agreements of any kind that would violate the laws of Tennessee.  Tenn. Code Ann. § 39-12-103(a).  "The offense of conspiracy, aimed at group criminality, is based on the principle that offense committed by a group poses a greater public threat than offense committed by a single individual."  Tenn. Code Ann. § 39-12-103, Sentencing Commission Comments.  The statute prohibiting the sale or delivery of illegal drugs has a different legislative purpose.  It falls within the "Tennessee Drug Control Act of 1989," Tenn. Code Ann. § 39-17-401.  This act defines drug related charges, defines and schedules controlled substances, and sets penalties.  The act does not address group criminality, as does the conspiracy statute.  Thus, these statutes do not share a similar legislative purpose.

16

Because different elements are required under each statute, the same evidence was not used to prove both offenses, and the statutes have different legislative purposes, the convictions for both the sale of cocaine and the conspiracy to sell cocaine do not violate double jeopardy.

The defendant also contends that his convictions violate due process. He cites State v. Anthony, 817 S.W.2d 299 (Tenn. 1991) in support of his position. In Anthony, our supreme court addressed the issue of whether dual convictions for armed robbery and aggravated kidnaping violated the due process guarantees of Article I, § 8 of the Tennessee Constitution. The court concluded that when a confinement, movement, or detention is "essentially incidental" to an accompanying felony, such as robbery or rape, it is not sufficient to support a separate conviction for kidnaping. Id. at 306. The court warned that the kidnaping statute should be narrowly construed "so as to make its reach fundamentally fair and to protect the due process rights of every citizen . . . ." Id.

There are significant distinctions between this case and Anthony. In Anthony, our supreme court was concerned about the fact that proving one felony, the armed robbery, inherently and necessarily proved the elements of the second felony, kidnaping. In this case, the proof of the elements of sale of cocaine does not inherently or necessarily prove the elements of conspiracy. Our task under Anthony is to apply statutes narrowly so as to make their reach "fundamentally fair and to protect the due process rights of every citizen." Here, the defendant does not argue that a due process violation occurs in all instances in which an individual is convicted of selling cocaine plus conspiracy to sell cocaine. Rather, the defendant's argument is based purely on the particular method in which he, as a blind individual, must commit the offenses. He argues that his son's assistance was "essentially

17

incidental" to the sale.  We disagree.

The evidence indicated that the defendant, acting alone, arranged the illegal sales.  Both calls were placed to his home.  He made arrangements with the purchasers relating to times and places of the meetings.  He set the prices for the transactions.  While he may have constructively delivered the cocaine by enlisting the aid of his son, he actively participated in the sale of the cocaine to his buyers.  His son's assistance was not "essentially incidental" to the offense of selling drugs.

There will always be a nexus between the conspiracy and the substantive offense when the latter offense is completed.  A conspiracy, however, would rarely be "essentially incidental" to the underlying offense, as that term is used in Anthony.  In Anthony, it was "essentially incidental" to the robbery that the defendant contain his victims.  Here, the defendant argues that his son's participation in the sale was "essentially incidental" to the consummation of the sale, thereby creating an overlap between the proof presented to establish the drug offense and the offense of conspiracy. Yet, there are numerous ways that a blind individual might sell illegal drugs without securing assistance from another, such as conducting illegal transactions from his own home.  In our view, the participation of the defendant's son, while creating a conspiracy to sell cocaine, was not "essentially incidental" to the underlying offense.

Moreover, the statute prohibiting conspiracies is designed to combat a danger posed to the public that is different from the danger sought to be prevented by the drug statutes.  The plan and design of two or more individuals to sell cocaine creates an offense that is worthy of its own punishment:

> [C]ollective criminal agreement–partnership in
> crime–presents a greater potential threat to the public

18

than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

Callanan v. United States, 364 U.S. 587, 593-94, 81 S. Ct. 321, 325 (1961). In summary, it is our conclusion that the defendant's convictions do not offend double jeopardy or due process principles.

VII

The defendant next contends that he is entitled to a new trial based on the trial judge's statement that the defendant could be found guilty if he acted "recklessly." The transcript of the jury charge shows that the trial court provided the statutory definition of the term "recklessly":

"Recklessly" means that a person acts recklessly with respect to the circumstances surrounding the conduct or the results of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that it's disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

The trial court then made the following observation:

Now if you wonder why I give you these lengthy definitions of words like intentionally, knowingly, and recklessly, it's because those words are used in the language that defines the elements of these crimes. For example, going back to simple possession or casual exchange I have told you that one of the elements that must be proven by the state beyond a reasonable doubt is that the defendant either intentionally, knowingly or

19

> recklessly possessed for casual exchange a controlled
> substance.

The state concedes that the trial judge erred by stating that recklessness was a sufficient mens rea to sustain a conviction for casual exchange, a misdemeanor, under Tenn. Code Ann. § 39-17-418(a). Tenn. Code Ann. § 39-17-418(a) requires a mens rea of "knowingly." The state argues that the error was harmless because the defendant was convicted of greater offenses–sale of cocaine and conspiracy–which the trial court properly defined, and not the lesser included offense of possession or casual exchange. We agree. While it was erroneous for the trial court to instruct the jury as to recklessness, the error was clearly harmless in light of the defendant's convictions for the greater offenses. Under these circumstances, the erroneous instruction was never a consideration. Had the defendant been convicted of casual exchange, a new trial would have been warranted.

VIII

Next, the defendant raises an issue relating to the accuracy of the jury charge as to the possible range of sentence. The trial judge instructed the jury that the defendant, if convicted, would qualify for Range I sentences:

> The punishment for the sale of cocaine, a felony, may be a term of years <u>not less than eight years nor more than twelve years</u> in the state penitentiary and a fine up to two hundred thousand dollars. The punishment for delivery of cocaine, a felony, may be a term of years <u>not less than eight nor more than twelve years</u> in the state penitentiary and a fine up to two hundred thousand dollars. The punishment for conspiracy to sell and deliver cocaine, a felony, may be a term of years <u>not less than eight nor more than twelve years</u> in the state penitentiary.

(emphasis added).

20

The state concedes that the charge was erroneous because the defendant was actually a Range II offender. The possible range for each count was, therefore, twelve to twenty years. At sentencing, the trial court sentenced the defendant as a Range II offender to twenty years for each count.

Under similar circumstances, our supreme court has held that sentencing a defendant to a higher range than the jury has been informed is prejudicial to the judicial process. State v. Cook, 816 S.W.2d 322 (Tenn. 1991). In Cook, our supreme court ruled that a defendant's right to have the jury know the range of punishment applicable to the charges before deciding guilt or innocence "would be lost if the defendant were to be sentenced to punishments greater than what the jury finding guilt was instructed would be imposed." Cook, 816 S.W.2d at 327. The court reversed the convictions and remanded for a new trial. Id.

This court acknowledges that the state has proposed that the defendant be re-sentenced as a Range I offender, as opposed to a remand for a new trial. The defendant has attempted to accept the proposal. However, plea agreements are typically the function of the district attorney general and the defendant at the pre-trial stage, and are subject to the approval of the trial court. Tenn. R. Crim. P 11(e). See also Farmer v. State, 570 S.W.2d 359 (Tenn. Crim. App. 1978) (holding that the trial court is afforded discretion in the acceptance of a plea). In our view, any such proposals are best left for review by the trial judge, and should generally address all possible issues in a case. Thus, a reversal of the convictions and a remand for trial is the appropriate remedy.

IX

Finally, the defendant challenges the imposition of consecutive

21

sentences. The trial court sentenced the defendant to the maximum Range II sentence for each of the four convictions. Three of those sentences were ordered to be served consecutively. The defendant's challenge to his sentence is twofold. First, he argues that the effective sentence of sixty years was disproportionate to the seriousness of the offenses. Second, he argues that the imposition of consecutive sentences was inappropriate because he was subjected to "sentence entrapment," in that the length of his sentences was based upon the number of controlled buys arranged by law enforcement officials. Although the convictions have been reversed, there may be further review. This court will, therefore, consider the issue.

When an accused challenges the length, range, or manner of the service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant on his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

22

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).  In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications.  Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors.  There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonable related to the severity of the offenses involved.

State v. Taylor, 739 S.W.2d at 230.  The Sentencing Commission Comments adopted the cautionary language.  Tenn. Code Ann. § 40-35-115.  The 1989 act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[2] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

---

[2] The first four criteria are found in Gray.  A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion.  See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

>(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical, and mental damage to the victim or victims;
>
>(6) The defendant is sentenced for an offense committed while on probation; or
>
>(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In this case, the trial court imposed consecutive sentences based on two criteria: that the defendant is a "professional criminal," Tenn. Code Ann. § 40-35-115(b)(1), and that the defendant is an offender with an extensive criminal record, Tenn. Code Ann. § 40-35-115(b)(2).

The record indicates that the defendant was arrested after a second controlled buy. In the first sale, the undercover agents purchased 27.4 grams of cocaine from the defendant. In the second, the purchase was for 53.4 grams, for a total of approximately three ounces.

This court addressed the "sentence entrapment" issue in State v. John Derrick Martin, No. 01C01-9502-CR-00043, (Tenn. Crim. App., at Nashville, Dec. 19, 1995), aff'd and remanded on other grounds, 940 S.W.2d 567 (Tenn. 1997). In Martin, the defendant was arrested after four sales of cocaine to undercover agents in an aggregate amount of 13 ounces. He was convicted at trial as follows:

>Counts One, Two, and Three–sale of cocaine (ten year sentences on each count);
>
>Count Four–possession of cocaine with the intent to sell (ten year sentence);

24

> Count Five–possession of drug paraphernalia (six month sentence);
>
> Count Six–driving on a suspended license (three month sentence).

The trial court imposed consecutive sentences for each conviction after finding that the defendant was a professional criminal and that he committed the offenses while on probation. The panel concluded that while the defendant did qualify as a professional criminal and did in fact commit the offenses while on probation, the imposition of consecutive sentences was inappropriate because the "severity of the crimes could vary significantly depending upon the specific number of buys the officers chose to conduct and the amounts purchased in each buy." Furthermore, the panel ruled "that forty years for the drug offenses is [not] reasonably related to the severity of these four crimes." Id. at 9. The defendant's sentence was modified so that "the two ten-year sentences on similar counts one and two will run concurrently with each other and concurrently with all of the other counts including the two misdemeanor offenses." The remaining sentences were ordered to be served consecutively. The defendant's original sentence of forty years and nine months was thereby reduced to twenty years and nine months.

Because the convictions have been set aside, it is unnecessary for this court to rule on the propriety of the consecutive sentences. Nevertheless, it may be appropriate, should the defendant be re-convicted for multiple offenses, for the trial court to consider the ruling in Martin in the context of consecutive sentences.

Accordingly, the judgments of conviction are reversed and the cause is remanded for a new trial.

_____
Gary R. Wade, Presiding Judge

25

CONCUR:


_____
David H. Welles, Judge


_____
Joe G. Riley, Judge

26