# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 14, 2000

## STATE OF TENNESSEE v. WILLIAM "BUTCH" OSEPCZUK

**Direct Appeal from the Circuit Court for Lawrence County**
**No. 20673     Stella L. Hargrove, Judge**

---

### No. M1999-00846-CCA-R3-CD  - Filed February 1, 2001

---

William Osepczuk was convicted of criminal attempt to commit first degree murder and was sentenced to twenty-five years in the Department of Correction. He now appeals his conviction challenging the sufficiency of the convicting evidence based upon the non credible testimony of the victim and the erroneous admission of non relevant physical evidence.  Finding the proof more than sufficient to support his conviction, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Hershell D. Koger, Pulaski, Tennessee, for the Appellant, William "Butch" Osepczuk.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Marvin E. Clements, Jr., Assistant Attorney General, T. Michael Bottoms, District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The Appellant, William "Butch" Osepczuk, appeals the verdict of a Lawrence County jury finding him guilty of the criminal attempt to commit first degree murder of Angelo Wilson.  For this offense, the trial court imposed the maximum sentence of twenty-five years confinement.  In this appeal as of right, the Appellant contends that the evidence is insufficient to support his conviction.

We affirm the judgment entered by the trial court.

## Background

During 1997 and 1998, Angelo Thomas Wilson acted as an informant and engaged in a number of "undercover drug buys" for the Lawrence County Sheriff's Department. After a period of time, it became accepted "street" talk that Wilson was acting as a drug informant.

Wilson was employed at a local manufacturing plant and worked the 10:00 p.m. to 7:00 a.m. shift. On the evening of September 9, 1998, Wilson was at a friend's house waiting for his brother to furnish him a ride to work when the Appellant showed up. Wilson had known the Appellant since childhood. After a brief conversation, the Appellant offered to give Wilson a ride to work and the two men proceeded to walk to a nearby motel where the Appellant was staying.

The two waited until a friend of the Appellant, known as Terry, arrived in a black or gray four door vehicle. The Appellant informed Wilson that "he had to make a stop or two and then he was going to drop [Wilson] off at work." The Appellant and Terry rode in the front of the vehicle and Wilson sat in the rear.

> [The men] went to the store across the street from the motel and [the Appellant] made a pit stop at a friend's house and parked down at the bottom of the hill and he said he had to make another stop. He had some [drug] buys he had to do. . . . [They then] went out Mount Ararat Road. [The Appellant and Terry] let me out on the road [next to a soybean field]. [The Appellant] said he didn't want me to know the people. I said, "That's was fine. That's no problem." It didn't dawn on me and then [the Appellant] and them came back down the road. . . . [The Appellant] stopped the car and said, "Come on, let's go," and that's when he started shooting.

Wilson was shot in the right leg. He then began running into a bean field. He heard additional shots and realized that he was "hit all over [his] body." Wilson was struck approximately seven or eight times; resulting in gunshot wounds to his right hand, his right thumb, between his chest cavity and his rib cage, in the back, in the right leg, and twice in the left leg. After being struck by gunfire, he fell to the ground. The Appellant and Terry found Wilson in the field and Terry held the victim while the Appellant beat him in the back of the head with the butt of the gun and a stick. After a futile attempt to defend himself, Wilson withdrew further resistance. Terry remarked, "He is dead. Come on, let's go." The men then left. Wilson then managed to walk to a nearby house where he sought assistance. Wilson informed both the resident of the house and paramedics that responded to the scene that the Appellant was the individual responsible for the shooting.

Law enforcement officials recovered five .45-caliber shell casings at the crime scene and observed a trail leading into the bean field. A bloody shirt with what appeared to be bullet holes, a watch, sunglasses and keys were located in the field. Officers later obtained a search warrant for the Appellant's room at the Traveler's Motel. A .45-caliber bullet was discovered during the execution of the search warrant. The .45-caliber weapon was never recovered.

Michael Glen Parrot testified that his apartment was burglarized in 1998, resulting in the theft of his "High Point .45-caliber automatic pistol." The weapon was a "rather large gun," nickel-plated. Mr. Parrot had saved casings from his weapon to have reloaded. After the attempt on Angelo Wilson's life, Mr. Parrot furnished the Sheriff's Department with these casings fired from his weapon. The casings were sent to the crime lab for comparison with those found at the crime scene. The examination proved that the casings had been fired from the same weapon.

The Appellant testified that, on September 9, 1998, he met Angelo Wilson at Donald Haygood's house at about three o'clock that afternoon. The men stayed there for approximately one hour and then proceeded to his room at the Traveler's Motel. The Appellant and Angelo were joined by Tim Cooper and Tiffany Wise. As the afternoon progressed, Angelo announced that he wanted some crack cocaine. The Appellant left the motel in Cooper's vehicle, purchased fifty dollars of crack cocaine, and returned to the motel room. Angelo proceeded to smoke three crack rocks using an aluminum can fashioned into a pipe. Two hours later, Terry Polidro arrived at the room. Terry and the Appellant left in Terry's vehicle to purchase an additional seventy-five dollars of crack cocaine. Angelo remained at the motel. Upon returning to the motel, the Appellant returned to his room, but Angelo left with Terry. The Appellant did not see Angelo the remainder of the evening. The Appellant maintains that Angelo's crack-induced state-of-hallucination resulted in the current charge against him.

In rebuttal, the State presented the testimony of Anthony Quinn Wilson. This witness testified that on the night of the shooting, the Appellant arrived at his residence after midnight trying to sell a silver and black .45-caliber handgun.

Based on this evidence, the jury found the Appellant guilty of criminal attempt to commit first degree murder.

## I. Sufficiency of the Evidence

The appellant asserts that the evidence was insufficient for a rational trier of fact to find him guilty of criminal attempt to commit first degree murder. Within this assignment of error, the appellant maintains (1) the only direct evidence was the "highly questionable and clearly impeached" testimony of Angelo Wilson; (2) evidence of a bullet discovered in the Appellant's motel room did not establish the Appellant as the shooter, and was placed into evidence through inadmissible hearsay; and (3) the fact that Parrot had his pistol stolen on September 10, 1998, is of no significance to this case since the crime occurred on September 9th.

The Appellant's challenge is one of witness credibility. In essence, the Appellant asks this court to trespass upon the jury's duty to evaluate the credibility of the witnesses and reweigh the evidence introduced at the trial by reassessing the credibility of the victim, Angelo Wilson. It is not the prerogative of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. See generally State v. Carey, 914 S.W.2d 93, 95 (Tenn.

Crim. App. 1995); State v. Boling, 840 S.W.2d 944, 947 (Tenn. Crim. App. 1992). We decline the Appellant's invitation to overturn his conviction by making a choice different from that of the jury.

Within his challenge to the sufficiency of the evidence, the Appellant also contends that no physical evidence exists which established him as the perpetrator. In this regard, he asserts that the admission of the results of ballistics testing on various shell casings and the testimony of the "found" bullet in his motel room was immaterial and, thus, error. During the trial, Mr. Parrot testified that a .45-caliber pistol was unlawfully taken from his residence. Ballistics testing revealed that the shell casings from Mr. Parrot's weapon matched shell casings found at the crime scene. From this evidence, the inference can be made that the weapon used in the shooting was the weapon stolen from Mr. Parrot's apartment. The Appellant contends that this evidence should not have been admitted as Parrot testified that his weapon was taken on September 10, the day after the shooting incident, therefore, negating any connection between the weapon and the shooting incident. Although Parrot testified on cross-examination that the burglary occurred on September 10, he also stated that he discovered the burglary upon returning home from the Harvest Festival that weekend. September 10, 1998, was a Thursday. Additionally, witness testimony placed possession of a weapon matching the description of the stolen weapon with the Appellant on the night of the shooting. Accordingly, it was within the jury's discretion as the finder of fact and weigher of credibility to draw its own conclusion as to whether the burglary occurred prior to or after the shooting incident. Moreover, there was no objection to Mr. Parrot's testimony or the results of the ballistics tests performed on the shell casings. The failure to object to this evidence at trial results as a waiver on appeal. Tenn. R. App. P. 36(a); see also State v. Thornton, 10 S.W.3d 229, 234 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1999).

The Appellant also contests the admissibility of testimony of the "found" bullet in the Appellant's motel room. During trial, the State examined Investigator James Foriest as to the search of the Appellant's motel room:

> **STATE:** During the course of that search, did you find anything of any significance that you felt might be related to this case, sir?
>
> **FORIEST:** During the initial search we took in a few pieces of evidence. A piece of evidence that I feel like you are referring to, the bullet.
>
> **STATE:** Yes.
>
> **FORIEST:** The bullet. That was actually brought to my attention by the motel manager.

Defense counsel objected to the testimony as being hearsay. The prosecutor then rephrased his question:

**STATE:** Let me ask it this way Investigator Foriest: Did you during the course of that search and perhaps toward the end of the search, did you have some conversation with the motel owner?

**FORIEST:** Yes, sir.

**STATE:** As a result of that did you go back into the room and look in some specific place inside the room?

**FORIEST:** Yes, sir.

**STATE:** What did you find there, sir?

**FORIEST:** A .45-caliber bullet.

**STATE:** Where was it located in the room?

**FORIEST:** It was on the floor underneath the edge of the bed.

On cross-examination of Investigator Foriest, defense counsel made further inquiry as to the discovery of the bullet.

**MR. KOGER:** September 16th, somewhere in the afternoon is when you went over to that room and on the floor underneath the bed or by the bed you found this bullet; right?

**FORIEST:** If I can explain the exact situation. That is not a yes or no answer.

**COURT:** The Court will allow –
**MR. KOGER:** As long as it doesn't involve hearsay that's alright.

**FORIEST:** We had held the keys to that room for a few days. The manager, Mr. Shafrai, if I have pronounced it correctly, had wanted to get the key back if we were finished with the search so that he could clean it up and get it ready for rental again and I had returned the key to him. I was outside in the parking lot outside the room talking to another individual when Mr. Shafrai came out while he was cleaning the room to show me what he had found while removing the sheets and what not.

Any challenge to the introduction of the bullet is without merit. First, no hearsay evidence was introduced during the State's examination of the witness. Second, no objection was made by defense counsel as to the introduction of the bullet into evidence. See Tenn. R. App. P. 36(a). Finally, defense counsel elicited the testimony to which he now complains. Id. For these reasons, the Appellant has waived any objection to this evidence.

Contrary to the Appellant's numerous attacks on the sufficiency of the evidence, we conclude that the evidence is more than sufficient to support the jury's verdict. The victim, who had known the Appellant since childhood, identified the Appellant as the person who fired multiple gun shots at his person and beat him in the head with a gun and a piece of wood. The physical evidence at the crime scene supported the victim's testimony. This proof is sufficient to establish the elements of criminal attempt to commit first degree murder. See Jackson v. Virginia, 443 U.S. 307, 317, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e); Tenn. Code Ann. § 39-13-202; § 39-12-101. Moreover, the law is well established that the testimony of a victim identifying the perpetrator is sufficient in and of itself to support a conviction. State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993).

For these reasons, the judgment of conviction entered by the trial court is affirmed.

_____
DAVID G. HAYES, JUDGE