IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 22, 2002

## ISAAC EARL EDGIN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 36960     John H. Gasaway, III, Judge**

———————————

**No. M2001-02667-CCA-R3-PC - Filed September 23, 2002**

———————————

Petitioner filed a petition for post-conviction relief, claiming:  (1) the trial judge, at petitioner's original trial, should have recused himself from hearing the trial under Tennessee Supreme Court Rule 10, Canon 3(E); and (2) the public defender, at the original trial, rendered ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and Article 1, Section 9 of the Tennessee Constitution.  At the conclusion of an evidentiary hearing, the post-conviction court denied relief.  Based upon our review of the entire record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

L. TERRY LAFFERTY, SR.J., delivered the opinion of the court, in which JOHN K. BYERS and WILLIAM H. INMAN, SR.JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Isaac Earl Edgin.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Arthur F. Bieber, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### BACKGROUND

The petitioner, Isaac Earl Edgin, is presently serving two concurrent twenty-year sentences in the Department of Correction for his convictions of two counts of aggravated rape involving his two sons, ages six and seven at the time of the offenses.  On June 5, 1992, a Montgomery County

jury found the petitioner guilty of the aggravated rape of his two sons, J1[1] and J2. On direct appeal, this court affirmed the petitioner's conviction involving J2, but reversed the conviction involving J1 for a "*Brady*[2] violation." *See State v. Isaac Earl Edgin,* No. 01C01-9302-CC-00046, 1993 Tenn. Crim. App. LEXIS 705, at \*12-\*13 (Tenn. Crim. App., Nashville, Oct. 14, 1993). Our supreme court granted both the State's and petitioner's applications for permission to appeal on the question of the alleged "*Brady* violation." The supreme court reversed this court's decision in the conviction of J1, finding that the alleged "*Brady* violation" was not material and did not create a reasonable doubt as to petitioner's guilt involving J1, thus reinstating petitioner's conviction. *State v. Edgin,* 902 S.W.2d 387 (Tenn. 1995). Important to the disposition of this case are the circumstances surrounding petitioner's convictions. The opinion of the supreme court sets forth the salient facts.

> The salient facts of record indicate that all activity here involved occurred in the course of three days in March/April 1991 when the minor victims were visiting with Edgin a their foster grandmother's residence. The sexual penetration was accomplished upon each victim in the presence of the other victim. Upon concluding the sexual activity, Edgin threatened to harm them if they were to tell anyone what had happened.

> The testimony of each victim was essentially consistent in all material aspects with the testimony of the other. After each victim had testified, the State provided the defendant's counsel with that victim's pretrial statement pursuant to Tenn. R. Crim. P. 26.2(a).

> The victims' statements were essentially consistent with their testimony except in one particular: J1's statement mentioned the possibility that a person other than Edgin had abused J1 sexually prior to the incident here involved.

*Id.* at 388 (footnote omitted).

The other person was a "Shawn." Counsel insists that pursuant to his discovery requests, the State should have furnished the statement characterized by him as "*Brady*" material, prior to trial. He suggests that had the statement been provided earlier, he could have attempted to locate "Shawn" and interview him. The State asserts that the statement in question is not "*Brady*" material.

---

[1] It is the policy of this court to refer to minor victims of sexual abuse by their initials only. Because both victims have the same first initial, the older victim will be referred to herein as "J1," and the younger as "J2."

[2] *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963).

In February 1996, petitioner filed a *pro se* post-conviction relief petition alleging, among other things, ineffective assistance of counsel. Counsel was subsequently appointed, and an amended petition was filed on July 17, 1996. Petitioner alleged the following errors:

1. Counsel failed to ask the trial judge to recuse himself.

2. Counsel failed to appeal the admission of hearsay statements.

3. Counsel failed to attack the sufficiency of the indictments.

4. Counsel failed to effectively cross-examine a medical witness.

5. Counsel failed to call certain witnesses.

6. Counsel failed to address errors concerning election of offenses at trial.

7. The prosecution was malicious.

In 1999, the trial court entered an order denying petitioner's petition.

Petitioner appealed the trial court's denial of post-conviction relief to this court, and a panel of this court remanded this cause for a new post-conviction relief hearing for failure of the trial court to enter findings of fact and conclusions of law. Furthermore, the new hearing was ordered to be held before a new judge. *See Isaac Earl Edgin v. State,* No. M1999-01620-CCA-R3-PC, 2001 Tenn. Crim. App. LEXIS 91, at *8 (Tenn. Crim. App., Nashville, Feb. 1, 2001).

## EVIDENTIARY HEARING

At the conclusion of the evidentiary hearing, the post-conviction court entered a terse order on October 12, 2001, finding "there is no significant factual dispute as to then, [trial counsel's] representation of [the petitioner] . . . [and] that State vs. Momon is not retroactive, and, therefore its requirements [d]o not apply to this pre-Momon case." We find it necessary to set forth the salient facts of the evidentiary hearing for the determination of the issues in this direct appeal.

### A. Ineffective Assistance of Counsel

### 1. Recusal Issue

It was stipulated by both the petitioner and State that no written motion for the trial judge to recuse himself was filed with the court papers, nor was there an oral motion for the trial judge to recuse himself.

Petitioner testified he was charged with child abuse and neglect and "possession to manufacturing for resale" in 1985. Petitioner said the judge who presided over his trial for the aggravated rape charges was "back in '85 and '86 . . . my lawyer for other incidents, which happened to do with my ex-wife too." Petitioner stated the child abuse involved one of his sons, who was a victim in the aggravated rape charge. Petitioner was asked what had prejudiced the trial judge from hearing the aggravated rape charges involving the same children. The petitioner answered:

> Well, before Mr. Wedemeyer became my attorney he had another assistant in his office, which originally took over. You know, he bought him as his attorney. He's been kicked out since then. But when I went to talk to the original attorney he says well, I think you're guilty and I ain't going to do nothing for you. I said well, just hand me my money and I'll just go find somebody else.
>
> Well, he refused to do that so I went to the Board of Responsibilities on him. So Mr. – that's how Mr. Wedemeyer become my lawyer at that time.

Petitioner stated he told his trial attorney, Michael Jones, about this incident and the complaint with the Board of Professional Responsibility. According to petitioner, Mr. Jones was to look into this matter. Petitioner requested Mr. Jones to have the trial judge excuse himself since Mr. Wedemeyer knew the case from the beginning. According to petitioner, he pled guilty to the drug charge and physical assault of J1. Petitioner testified that he had no knowledge whether Mr. Jones filed a motion for the trial judge to recuse himself. According to petitioner, on the trial date, he requested his counsel to have the judge recuse himself. Petitioner believed that the trial judge was prejudiced against him for several reasons: there were no jury instructions; two different charges and two different locations; failure to make children accomplices; medical evidence; and numerous other rulings. Petitioner determined these issues after trial and by reading law books. During cross-examination, petitioner stated he did not recall if Mr. Jones talked to him about not having Judge Wedemeyer recuse himself. Petitioner stated his main defense was that he never sexually assaulted his two sons and "it didn't happen."

Michael Jones testified that he represented petitioner at trial and on direct appeal to this court and the Tennessee Supreme Court. At this hearing, Mr. Jones stated he had no specific recollection of any conversation with petitioner about Judge Wedemeyer recusing himself. During cross-examination, Mr. Jones testified as follows:

> Q. Mr. Jones, having read those pages [petitioner's brief from prior post-conviction hearing] do you have any recollection at this time of whether or not the fact that then Judge Wedemeyer when he was a lawyer had represented Mr. Edgin on an aggravated assault charge involving one of the boys?

-4-

A. Yes. I remember there was a prior felony conviction involving one of the boys and Judge Wedemeyer had, in fact, represented him. All of that would have been on the judgment form.

Q. Do you have any idea when you became aware of this situation with respect to trial?

A. Very early on in the trial preparation.

Q. Did you seek out the actual court file to verify what Mr. Edgin told you on the aggravated assault?

A. I don't know whether I would have looked at the actual court file, but as far as–some way or another I knew what the actual facts were. The reasons for the plea.

. . . .

Q. Mr. Jones, were you aware of whether or not Mr. Edgin ever put in any kind of ethical complaint against a Ray Grimes, who was at the time of now Judge Wedemeyer representing Mr. Edgin, his law partner or an associate?

A. I have no memory of that.

Q. Is it possible you became aware of that complaint against Mr. Grimes?

A. I would think I would remember that had I known that.

Q. Can you state now, many years later, what you would have done if you had been aware that Mr. Edgin made some kind of board complaint against Judge Wedemeyer's partner?

A. I hate to ask you a question, but when was this case tried? In the year. I know it's in courtroom two, and I'm thinking '91 or '92 what we're [sic].

Q. Sir, I believe the record reflects almost exactly today's date; I think June 5, 1992.

A. That length of time between Judge Wedemeyer taking the bench in '89 and 1992, I don't believe there would have been – I would have still wanted Judge Wedemeyer on the bench.

Q. Why would you have wanted Judge Wedemeyer on the bench, sir?

A. Comfort level, I guess. Confidence level. Whatever you want to call it.

Q. Can you explain that in a little bit more detail what you mean by comfort and confidence level?

A. Just tried a lot of cases in front of him by that time.

Q. You're referring to your level of comfort and confidence in his rulings and ability to try a fair case; is that correct?

A. Yes.

Q. Do you recall whether you ever discussed with Mr. Edgin your comfort and confidence level, or any of these things he drew to your attention about Judge Wedemeyer being his lawyer several years before?

A. I mean, we would have had to with that knowledge. Judge Wedemeyer being the judge.

Q. Do you recall whether there was any discussion about the possibility of some kind of spill over or leak over from a personal relationship, some potential, at least, for favorable rulings from the court?

A. I would imagine that we had discussed that. As far as actual memory of that, no.

Q. And if I understand your correct – your testimony correctly, sir, you're unable to say when you became aware of Judge Wedemeyer's situation with respect to the trial in June of '92?

A. No. But I mean that type of thing you look at instantly. I mean, that would be one of the first matters I'd be looking for is the prior conviction in–you know, talking in terms of whether you testify or don't testify in those situations.

Mr. Jones testified the thrust of his defense for petitioner was "it never happened."

Based upon Exhibit 1, the post-conviction court read into the record Judge Wedemeyer's representation of petitioner in 1986. The post-conviction court found that a warrant for aggravated assault was filed against petitioner for the excess spanking of his twenty-two-month-old son, in March 1986. The defense attorney was Ray Grimes, which the post-conviction court took judicial notice that Robert Wedemeyer and Ray Grimes were law partners. Petitioner was subsequently indicted for aggravated assault. In April 1986, the public defender was appointed, but, in November 1986, the court files indicated that Robert Wedemeyer was defense counsel. With the signature of Robert Wedemeyer, petitioner entered a plea of guilty to aggravated assault on November 14, 1986. Petitioner received a two-year suspended sentence, Range 1, and probation for two years with special conditions regarding family and parenting counseling.

## 2. Sufficiency of Indictments

In confusing testimony, petitioner stated a conflict arose during trial over whether a sexual offense, involving J2, had occurred at a place called Dale Terrace. Petitioner stated that Indictment No. 30133, involving J2, should have been dismissed. Finally, petitioner stated both Indictment Nos. 30133 and 29849 and the amended indictment were presented to the jury, which became an election of offenses. Apparently, No. 30133 alleged that one act of molestation occurred at a certain place over the Easter weekend, when the victim was not at this location. This court assumes this testimony supports the claim of ineffective assistance for defense counsel's failure to explore the differences in these indictments.

As to the allegations in the two indictments, Mr. Jones, defense counsel, stated that he filed a bill of particulars because the dates or locations had changed three times. This necessitated a change in defense. A primary defense was that one of the victims was not in the home at the time of the alleged offense. Prior to trial, defense counsel learned that the State was seeking an amendment to an indictment alleging a sexual assault of one of the victims over the Easter weekend. Defense counsel stated he had sufficient time to check into this matter, by seeing if the boys were in school on the Monday following Easter.

## 3. Failure to Call Witnesses

Petitioner testified that defense counsel failed to call Dr. Pritchett, as well as Ms. Glass and Carl Harbor of the Department of Human Services ("DHS"). According to petitioner, Dr. Pritchett saw J2 and J1 on April 16, 1991, for a well checkup, a few days after the alleged offense. Petitioner learned of this matter after trial, but he delivered the medical records to defense counsel prior to trial.

Defense counsel testified that he had spent several months investigating and preparing for trial. He met with petitioner many times, which included discussions of which witnesses to summon for trial. A review of Exhibit 7, the trial transcript, reflects that defense counsel called four witnesses

to testify: William Porter; Bessie Johnson, petitioner's mother; Billy Edgin, petitioner's brother; and the petitioner.

### 4. Cross-Examination of Medical Witness

Petitioner testified that Dr. William R. Moore testified at trial that he found two areas of scarring in the rectal area of J2, the youngest son. The scarring was between the rectum and scrotum. Petitioner stated defense counsel failed to ask Dr. Moore how Dr. Moore found scarring tissue on November 14 or November 4, and had not seen the scarring on April 16, a few days after the alleged incident. Secondly, petitioner stated defense counsel failed to ask Dr. Moore what had caused the scarring. Petitioner learned about these matters after trial. Petitioner did not recall if defense counsel asked Dr. Moore about this scarring.

Defense counsel testified that he obtained the medical records of one of the victims, who had been in the hospital. Counsel stated "my memory is that at some point we were told those events [scarring] were supposed to have occurred in a specific year, . . . the older son had been in the hospital after that period, would have been examined and nothing would have been found. However, at trial, the date was changed." A review of Exhibit 7, trial transcript, reflects that defense counsel cross-examined Dr. Moore about three examinations of J2. These examinations were March 10, 1991, April 16, 1991, and June 17, 1991, which was a hospital visit. According to Dr. Moore, the medical records for those visits did not reflect a rectal examination, and there was no mention of sexual abuse.

### 5. Failure to Appeal "Hearsay Admissions"

Petitioner testified defense counsel failed to appeal Dr. Moore's history, Dr. Harold Vann's history, and his ex-wife's alleged rape. Petitioner stated he did not discuss these issues with defense counsel, although petitioner received a copy of defense counsel's appellate brief. Defense counsel advised petitioner that he could win the appeal on "*Brady*."

Defense counsel testified that he handled his own appeals. Counsel did not recall any discussions with petitioner about the appeal. Petitioner was present at the hearing on the motion for a new trial and knew what was being appealed. Counsel had no recollection of petitioner making any requests or inclusions for the appeal. A review of Exhibit 7, trial transcript, reflects that defense counsel cross-examined Dr. Vann concerning his examination of J1 in July 1991. Defense counsel established that Dr. Vann found no evidence of sexual abuse of J1, although J1 alleged his father had penetrated his rectum. Also, Exhibit 7 reflects that defense counsel objected to Dr. Moore's testimony of J2's history of the allegation; however, the trial court overruled his objection.

### 6. State's Malicious Prosecution

Petitioner complains that during the trial, the trial judge, the district attorney general, and his trial attorney argued over whether J2 was present at the alleged event that occurred Easter weekend, and the trial judge overruled the motion for acquittal. According to petitioner, if J2 was not there, the case should not have gone to the grand jury, and Judge Wedemeyer should have declared both sons accomplices. Although petitioner claims Judge Wedemeyer failed to give a jury instruction, petitioner does not state or identify which jury instruction is at issue.

Defense counsel, at the conclusion of the trial, submitted a special request for jury instruction. Counsel requested that the trial judge charge the jury that the testimony of Drs. Moore and Vann could not be considered as substantive evidence, but merely to corroborate the victim's testimony. This request was denied by the trial judge.

## LEGAL ANALYSIS

For a petitioner to succeed on a post-conviction claim, the petitioner bears the burden of showing, by clear and convincing evidence, the allegations set forth in petition. Tenn. Code Ann. § 40-30-210(f) (1997); *Pannell v. State,* 71 S.W.3d 720 (Tenn. Crim. App. 2001). When this court undertakes a review of the lower court's decision on a petition for post-conviction relief, the lower court's findings of fact are given the weight of a jury verdict and are conclusive on appeal absent a finding that the evidence preponderated against the judgment. *Id.; Black v. State,* 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. *Id.* Further, questions concerning the credibility of a witness and the weight to be given their testimony are resolved by the post-conviction court. *Id.*

### A. Recusal of Trial Judge

Petitioner contends, in his brief, that the trial judge at the original trial should have recused himself from the hearing under Tennessee Supreme Court Rule 10, Canon 3E. Furthermore, petitioner contends that he is entitled to relief in that the record contains no judicial conflict waiver, which must be a personal, intentional, and knowing waiver of this right. The basis for this recusal is the trial judge represented petitioner as his attorney in a criminal matter in 1986. Canon 3E(1) reads, in pertinent part: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned."

It was stipulated by both parties that a written motion for recusal was not filed in the original trial, nor was there any oral motion by petitioner on the record for the trial judge to recuse himself. Petitioner acknowledges that normally questions of recusal arise via motions, but since such a motion was not filed in this cause, it was obligatory for the trial judge to *sua sponte* raise this issue, citing *State v. Thornton,* 10 S.W.3d 229, 237 (Tenn. Crim. App. 1999), and *Alley v. State,* 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994). The State counters that petitioner has waived this issue of recusal for his failure to raise it on direct appeal. Tenn. Code Ann. §§ 40-30-206(g), -210(f) ("There is a rebuttable presumption that a ground for relief not raised before a court of competent

jurisdiction in which the ground could have been presented is waived."). Furthermore, petitioner has failed to meet his burden of establishing the trial judge's impartiality could be reasonably questioned.

In the present case, the trial judge was not per se disqualified by any of the specific sections of Canon 3E(1). Tenn. Sup. Ct. R. 10. The plain language of that canon provides, however, that disqualification is not limited to the enumerated circumstances of Section 3E(1), (a), (b), (c), and (d). "Under this rule, a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply." *Id.* In this case, could the fact that the trial judge represented petitioner, as defense counsel in a criminal matter in 1986, be questioned? Under these facts, we conclude that the trial judge's impartiality might have been reasonably questioned. Therefore, we find that recusal was obligatory. *See Pannell*, 71 S.W.3d at 725.

Finding that recusal was obligatory, did defense counsel's failure to seek the trial judge's recusal constitute ineffective assistance of counsel? The petitioner testified that he requested defense counsel to seek the trial judge's recusal before trial. Defense counsel testified that he had no recollection of petitioner making such a request. Although defense counsel did not state when he learned of the trial judge's previous representation of petitioner, he was aware of this issue prior to trial. Defense counsel was certain that he discussed this issue with petitioner because it would have been one of the first matters he addressed. The evidence of a prior conviction could influence a decision to testify or not. Defense counsel stated that he was very comfortable with the trial judge's conduct at trial, but if petitioner had insisted that counsel have the trial judge recuse himself, he would have done so. In oral statements, the post-conviction court acknowledged this issue to be one of credibility between petitioner and defense counsel. It is obvious the post-conviction court resolved this issue in favor of defense counsel by its ruling in denying relief. The evidence does not preponderate against the post-conviction court's ruling.

We agree with petitioner that the better practice would have been for the trial judge to *sua sponte* reveal his past representation in the absence of a motion for recusal. Therefore, we must search the record to determine if the trial judge's impartiality can be reasonably questioned. The evidence establishes that the trial judge represented petitioner, in 1986, for aggravated assault involving one of his sons. The trial court was appointed circuit court judge in May 1990 and presided over petitioner's trial in June 1992, more than six years after his representation of the petitioner in 1986. The petitioner has failed to point out any information that the trial court learned during the 1986 representation that affected the outcome of petitioner's jury trial in 1992. Although the 1991 offenses involved one of the same victims as in 1986, petitioner has not demonstrated any prejudice or bias on the trial judge's part. Likewise, petitioner has failed to establish in Exhibit 7, trial transcript, any action by the trial judge before or during the trial indicating any bias or impartiality, other than his belief that the trial court "leaned against him." We conclude petitioner has not met his burden of proof by clear and convincing evidence that the trial court's *sua sponte*

non-recusal affected his trial. We disagree with petitioner that the trial judge's[3] conflict of interest was overwhelming and amounted to an abuse of discretion. There is no merit to this issue.

## B. Ineffective Assistance of Counsel

Petitioner contends that defense counsel rendered ineffective assistance of counsel in six specific areas: (1) counsel failed to appeal the admission of certain "hearsay statements"; (2) counsel failed to attack the sufficiency of the indictments; (3) counsel failed to effectively cross-examine a medical witness; (4) counsel failed to call certain witnesses; (5) counsel failed to address errors concerning election of offenses at trial; and (6) the prosecution was malicious.

To succeed in an attack for ineffective assistance of counsel, petitioner must demonstrate that counsel's representation fell below the range of competence demanded by attorneys in criminal cases. *Baxter v. Rose,* 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), the petitioner must establish (1) deficient representation, and (2) prejudice resulting from the deficiency. The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns,* 6 S.W.3d 453, 461 (Tenn. 1999); *Pannell v. State,* 71 S.W.3d 720, 726-27 (Tenn. Crim. App. 2001). "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State,* 40 S.W.3d 450, 458 (Tenn. 2001). However, conclusions of law are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id.* Applying the foregoing principles, this court must determine whether the evidence preponderates against the post-conviction court's finding that petitioner received the effective assistance of counsel. *Pannell,* 71 S.W.3d at 727.

### 1. Failure to Appeal "Hearsay Admissions"

Petitioner complains that defense counsel failed to appeal the testimony of Drs. Moore and Vann concerning the medical histories obtained from the victims in this cause. However, petitioner testified that he did not discuss these "hearsay admissions" with defense counsel. The record reflects that Dr. Moore examined J2 for alleged sexual abuse at the request of DHS and obtained a medical history as to how the offense occurred. Defense counsel objected to this testimony, but the trial judge overruled the objection, finding that the medical history complied with Tenn. R. Evid. 803(4). Dr. Vann testified as to his examination of J1 with a history of how the offense was allegedly committed. There was no objection to this testimony. Both doctors testified such history was

---

[3]Petitioner contends that the trial judge had an affirmative obligation to see that any potential judicial conflict of interest was resolved prior to trial. Waivers of an unbiased judge may be possible, but require a "clear evidence of waiver or consent." Such waiver must be a personal, intentional, and knowing waiver of this right. *Momon v. State,* 18 S.W.3d 152, 165-66 (Tenn. 1999). Further, petitioner contends that in the absence of a waiver, prejudice is presumed. We agree that the proper procedure for determining waiver would have been a hearing on the record as to the trial judge's qualifications. However, as we have stated, a review of the entire record does not establish any prejudice or bias on the trial court's ability to preside at a fair trial. There is no merit to this issue.

necessary for treatment as well as diagnosis. Defense counsel stated he did not recall any discussion with petitioner concerning matters addressed on appeal, but petitioner had a copy of his appellate brief and petitioner was aware of the grounds alleged as error in the motion for a new trial. Petitioner has failed to establish that defense counsel was ineffective for not appealing these "hearsay admissions." There is no merit to this issue.

### 2. Sufficiency of Indictments

### 5. Election of Offenses

As best can be determined from petitioner's confusing testimony on these issues, petitioner attacks defense counsel's representation for failing to attack the sufficiency of the allegations in the indictments. Petitioner contends that Indictment No. 30133 should have been dismissed since the allegation of J2's charge occurred during the Easter weekend when J2 was not there, but this indictment, J1's indictment, and an amended indictment went to the jury, which amounted to election of offenses. Apparently, a dispute arose over when and where the allegation involving J2 occurred. Defense counsel filed a bill of particulars to resolve this issue. Defense counsel called the petitioner's mother and petitioner to refute that J2 was at the home of the grandmother over the Easter weekend. The jury resolved this issue in favor of the State. Petitioner has failed to include in this record copies of the indictments or amended indictment, which he claims were deficient. Nor has petitioner pointed to any deficiency in defense counsel's representation in the record concerning the validity of the indictments. Frankly, this court is at a loss to understand petitioner's complaint concerning election of offenses. There is no merit to these issues.

### 3. Cross-Examination of Medical Witness

Petitioner complains that defense counsel failed to cross-examine Dr. Moore concerning the scarring tissue found on J2 on November 4 or 14, 1991, when prior medical examination of J2 on April 16 indicated no scarring. Defense counsel obtained J2's hospital records concerning this issue. The record establishes that defense counsel cross-examined Dr. Moore concerning the April 16 examination, as well as additional medical examinations on June 17, J2's hospital visit. There is no merit to this issue.

### 4. Failure to Call Certain Witnesses

Petitioner complains that defense counsel failed to call Dr. Pritchett, Ms. Glass from DHS, and Carl Harbor from DHS. According to petitioner, Dr. Pritchett saw J2 and J1 on April 16, a few days after the Easter weekend event. However, petitioner did not request defense counsel to summon these witnesses since he did not learn of them until after trial. Petitioner does not explain how then defense counsel should have called these witnesses. Nor did petitioner produce these witnesses to testify as to what they would have said at trial. *Thompson v. State*, 958 S.W.2d 156, 163 (Tenn. Crim. App. 1997).

The record reflects that defense counsel discussed with petitioner which and how many witnesses would be called in his behalf. Defense counsel met with petitioner's mother, brother, and friend, William Porter, and attempted to interview the victims. Counsel also obtained medical records of J2, the victim's school records, and considerable discovery. There is no merit to this issue.

### 6. Malicious Prosecution

Petitioner contends that certain actions occurred during trial which led him to believe the State maliciously prosecuted him for these offenses. These alleged actions include: the trial judge's overruling of defense counsel's motion for acquittal; the trial court's failure to declare his sons as accomplices; and the request for a jury instruction to the trial judge. Petitioner has totally failed to point out where in the record such allegations affected the outcome of his trial. These allegations are merely conclusions on petitioner's part from a reading of Exhibit 7, trial transcript. There is no merit to this issue.

### <u>CONCLUSION</u>

For the foregoing reasons, we find the ineffective assistance of counsel issues raised by petitioner are without merit. Accordingly, the judgment of the post-conviction court in denying the petition is affirmed.

_____
L. TERRY LAFFERTY, SENIOR JUDGE