IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 20, 2003

## EARL DEWAYNE HOLLOWAY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 234967    Rebecca J. Stern, Judge**

_____

**No. E2002-02127-CCA-R3-PC**
**July 10, 2003**
_____

The petitioner, Earl Dewayne Holloway, appeals the denial of his petition for post-conviction relief, alleging numerous instances of ineffective assistance of trial and appellate counsel. We conclude that the evidence does not preponderate against the findings of the post-conviction court and affirm the dismissal of the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY and THOMAS T. WOODALL, JJ., joined.

Lee Ortwein, Chattanooga, Tennessee, for the Appellant, Earl Dewayne Holloway.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; and Barry Steelman, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

On July 9, 1996, the petitioner was convicted, pursuant to a jury trial in the Criminal Court for Hamilton County, of second-degree murder and sentenced to a term of 22 years with a release eligibility of 85 percent. *See* Tenn. Code Ann. § 40-35-501(i)(1), (2) (Supp. 2002). His conviction was affirmed on direct appeal, and the supreme court denied his application for permission to appeal on September 11, 2000. *State v. Earl Dewayne Holloway*, No. 03C01-9803-CR-00117 (Tenn. Crim. App., Knoxville, April 30, 1999), *perm. app. denied* (Tenn. 2000).

On October 16, 2000, the petitioner filed a *pro se* "motion for correction of plain error," alleging that the trial court did not consider the state's written notice of intent to seek enhanced punishment and, therefore, incorrectly instructed the jury regarding the range of punishment for second-degree murder and release eligibility for that offense. While that motion was pending, the petitioner filed a *pro se* petition for post-conviction relief on November 17, 2000. The

post-conviction court appointed counsel to represent the petitioner, and numerous amendments, supplements, and memoranda were thereafter filed. On July 17, 2001, a panel of this court dismissed the petitioner's appeal from the denial of his motion to correct plain error on the basis that Tennessee Rule of Appellate Procedure 3(b) did not afford appellate review of the matter and that, at any rate, the instructions correctly stated the law applicable at that time. *State v. Earl Holloway*, No. E2000-03042-CCA-R3-CD (Tenn. Crim. App., Knoxville, July 17, 2001).

The post-conviction petition was set for hearing on March 18, 2002, at which time the petitioner, his sister, and his trial and appellate counsel testified. The post-conviction court took the matter under advisement and issued a written order and memorandum on May 21, 2002, dismissing the petition. The petitioner timely appealed, and the matter is now before us.

The following facts, pertinent to the petitioner's second-degree murder conviction, appear in this court's opinion affirming that conviction:

> On September 5, 1995, Greg Vinson, a resident of the West Side housing project in Chattanooga, encountered the [petitioner] and Elmonte Sims, who sat in a car parked in the College Hill Courts, a section of the West Side. When the [petitioner], who had known Vinson for several months, inquired whether anyone had drugs, Vinson responded that he did not know. At that point, the [petitioner] and Sims left their vehicle and walked toward "the Cut," a narrow passageway between two tall apartment buildings. A short time later, Vinson saw two individuals pointing guns at Sims. The [petitioner] was also present, but no one had pointed a weapon in his direction. The armed men quickly left "the Cut." The [petitioner] and Sims remained. At that point, an individual named Reginald Hitchcock, who appeared to be unarmed, "just came out of the blue," approached Sims, and began to remove his rings. Vinson attempted to stop the robbery but, before he could intervene, the [petitioner] shot Hitchcock in the back, thereby causing his death.
>
> . . . .
>
> Dubois Montrell Ross testified that he lived near "the Cut" and had witnessed the shooting of his friend, Reginald Hitchcock. Ross, who at the time of the shooting was with the victim's brother, Marlin Borgne, witnessed the robbery. He identified the robber as his cousin, Michael Franklin. Ross claimed that Franklin aimed a gun at Sims but not at the [petitioner]. He testified that after Franklin left, Hitchcock, who was unarmed, entered "the Cut" and started removing Sims' rings. Ross recalled seeing Vinson push Hitchcock away from Sims and try to prevent the robbery. At that point, Ross saw the

[petitioner] come from around the corner, remove his weapon from his belt, and shoot Hitchcock in the back. Before leaving the scene of the shooting, the [petitioner] pointed the gun at Vinson and Ross.

. . . .

Otis Smart, Jr., also witnessed the shooting. He recalled that he was walking home from the store when he saw the [petitioner] "pull out a gun, put it to Hitchcock's back and sho[o]t it." Smart testified that the victim did not have a weapon.

. . . .

Elmonte Sims, who had known the [petitioner] for several years, was a witness for the defense. Charged with first degree murder for his role in the shooting, Sims acknowledged that his trial date had not been set. He recalled that when he arrived at the [petitioner's] house on the day of the shooting, the [petitioner] said that Vinson had been by and had arranged a "deal for some [crack cocaine]." When the three met at College Hill Apartments, Vinson told them he needed five hundred dollars but said they could pay when they were able. He recalled that Vinson then instructed them to return in thirty minutes because he was still "cooking up the drug."

Sims testified that he and the [petitioner] returned to meet Vinson around 6:15 p.m., when a "bunch of guys jumped out from behind the building with guns." One individual approached Sims carrying a rifle. Sims recalled that he saw a shotgun, a small revolver, and a pistol with the trigger guard missing. He remembered that the person with the shotgun stole the money from his pockets. Sims, who admitted that he carried a gun with him at that time, testified that as one of the assailants held a small caliber weapon against the [petitioner's] head, another held a weapon to his head. He claimed that Reginald Hitchcock then arrived, pointing a pistol at Sims and the [petitioner]. Sims stated that Hitchcock then removed his necklace. When one of the assailants left the area, he passed his weapon to Michael Franklin. Sims testified that when Hitchcock ran towards him with the pistol aimed in his direction, the [petitioner] intervened, shooting Hitchcock. Sims stated that he and the [petitioner] then left the area as quickly as possible.

*Earl Dewayne Holloway*, slip op. at __.

In his various post-conviction filings, the petitioner raised a multitude of claims, focusing for the most part on trial and appellate counsel's alleged constitutionally ineffective representation, the trial court's jury instructions regarding punishment, the abridgement of his right to testify, his involuntary appearance in jail clothing before the jury on the first day of trial, and several evidentiary rulings during trial. We need not detail each and every allegation because on appeal the petitioner has narrowed considerably the scope of his complaints. They are (1) that he was denied the right to effective representation by trial counsel's failure to object to a portion of the state's closing argument wherein prosecution counsel expressed his personal opinion; (2) that trial counsel's failure to impeach a state witness, Otis Smart, constituted ineffective assistance of counsel; (3) that trial counsel was constitutionally derelict in allowing the petitioner to appear before the jury in jail clothing; and (4) that appellate counsel rendered deficient representation by failing to raise on appeal the trial court's refusal to admit the petitioner's entire statement to the police.

We have reviewed a transcript of the post-conviction evidentiary hearing in the record before us,[1] and in terms of the issues that the petitioner presses on appeal, the testimony does not appear to be hotly contested. During much of his testimony, the petitioner was argumentative. He was highly critical of trial counsel who, the petitioner testified, treated him like an "idiot." The petitioner complained that his attorney would not listen to him; he testified that he became so upset at one point that "[i]f I could have got close to [trial counsel], I would have hit him."

Of the issues before us, the only portion of the petitioner's testimony that is germane relates to how he was attired at the beginning of his trial. The petitioner testified that prior to trial he told his attorney that he wanted "street clothes" and that his sister could deliver them to the attorney's office. Petitioner said that his attorney did not want the clothes brought to the office; instead, the attorney advised that the petitioner's sister should bring them to the jail.

According to the petitioner, his family tried to bring his clothes to the jail several days before trial started, but the jail would not accept the clothes. He testified that the jail again rejected the clothes the day that his trial began. The petitioner said that at the end of the first day of trial, he addressed the court directly and asked the court to order his attorney to get his clothes. The petitioner's sister then brought the clothes to the attorney while they were in the courtroom. The petitioner described the jail clothes that he wore the first day of trial in the following fashion: "Some green camouflage which was too small . . . . They basically came around my shin bone. Shirt that was basically come around the middle of my arm. Nor ironed. It was tacky."

At the post-conviction hearing, the petitioner's sister, Rhonda Martin, testified and affirmed that on several occasions she attempted to bring civilian clothing to the jail, but the jail rejected the clothing. It was her recollection that the petitioner eventually received his clothes.

---

[1] At the beginning of the hearing, post-conviction counsel announced for the record that the petitioner had rejected a pending offer by the state to reduce his sentence from 22 to 15 years at 100% in exchange for withdrawing his post-conviction petition.

Over five years had elapsed between the time that the petitioner was convicted and the post-conviction hearing. At the hearing, trial counsel's memory of events related to representing the petitioner was imprecise. Trial counsel testified that he and the petitioner discussed clothing for trial, and trial counsel recalled that the petitioner said that he would have family members bring some clothes when they visited him in jail. Trial counsel did not remember any family members contacting him about clothing. Trial counsel believed that the start of the trial may have been delayed somewhat, awaiting the arrival of clothes, but when it appeared that civilian clothing would not be forthcoming, the trial judge insisted on beginning the trial. Trial counsel testified that he had no independent memory of the petitioner addressing the court directly about this clothes. Trial counsel did believe that the petitioner was wearing civilian clothes when trial resumed the following day.

The petitioner relies on his trial transcripts in support of his complaint that trial counsel failed to object to a portion of the state's closing argument. Initially, we note that the argument is somewhat confusing.

> Greg Vinson was the first witness that the State put on here. . . . If you remember I asked him, Greg, what involvement did you have in that drug deal, not to vouch for him or not to try to persuade you that he didn't, he probably did. He probably set up that drug deal. He probably went through with his plans to perp [the petitioner and Elmonte Sims a/k/a "Money,"], but they didn't know it, unless [the petitioner] had a part in it. Take advantage of Money, I don't know. I know this. They went down there at a bad time because they were preparing to rob them.

The petitioner contends that prosecution counsel's references, "I don't know" and "I know this," are highly improper and should have prompted an objection from trial counsel.

To support his argument that trial counsel failed to adequately impeach Otis Smart, the petitioner relies on the transcript of Smart's testimony at trial and on a typed police report of an interview with Smart shortly after the homicide. The petitioner points to alleged inconsistencies between Smart's testimony and what he told the police and criticizes trial counsel's failure to properly exploit the inconsistencies to impeach Smart.

The petitioner's final argument charges that appellate counsel provided deficient representation because counsel did not raise as an issue on appeal that the trial court improperly excluded the entire recorded and unrecorded statements that the petitioner had given to investigating officers. The testimony of the petitioner's appellate counsel at the post-conviction hearing was brief. Appellate counsel testified that the petitioner sent him a number of letters requesting that counsel raise various issues on appeal. Appellate counsel read the letters and evidently spent considerable time trying to explain to the petitioner why the law did not support the various issues. The issue received only scant attention in the post-conviction hearing.

In ruling that the petitioner was not entitled to post-conviction relief, the post-conviction court correctly summarized the applicable law and addressed the merits of each claim. Pertinent to this appeal, the court ruled that trial counsel did not provide deficient representation in connection with how the petitioner was dressed on the first day of trial. Moreover, the post-conviction court discerned no prejudice inasmuch as there was no evidence that the garments were identifiable as jail clothes, no proof that the camouflage was even objectionable to the petitioner at the time,[2] and it was evident from the testimony that the petitioner had been incarcerated prior to trial.

Likewise, according to the post-conviction court, any mistake in failing to object to prosecution counsel's self-reference in closing arguments was cured by the trial court's later jury instructions about the statements and arguments of counsel.

The post-conviction court was not persuaded that the differences between Smart's trial testimony and previous statement to the police had much impeachment value, and, at any rate, Smart admitted on cross examination that he did not come upon the scene until the petitioner drew the gun on the victim.

As for the statements that the petitioner gave to investigating officers, the post-conviction court concluded that the statements had both inculpatory and exculpatory sections and that the trial court erred in excluding defense use and introduction of the statements. Even so, the post-conviction court ruled that prejudice in failing to raise the issue on appeal had not been demonstrated because the jury had heard similar exculpatory evidence from state witnesses about the ambush and robbery of co-defendant Sims, from Sims who testified for the defense and whose testimony was similar to the petitioner's statements, and from an investigating officer that the petitioner cooperated with the investigation and led the police to the car and weapon.

Our review convinces us that the post-conviction court's rulings should be affirmed.

The law is settled that the post-conviction petitioner bears the burden of establishing, at the evidentiary hearing, his allegations by clear and convincing evidence. Tenn. Code. Ann. § 40-30-210(f) (1997). Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *Hodges v. S. C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). An appellate court is bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

When a post-conviction petitioner raises the issue of ineffective assistance of counsel, this court must determine if the evidence preponderates against the post-conviction court's findings (1) that counsel's performance was within the range of competence demanded of attorneys in

_____

[2] In reviewing the trial transcripts, which were made an exhibit to the post-conviction proceedings, we have not found the petitioner's claimed objection addressed to the trial court.

criminal cases, *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and/or (2) that any deficient performance did not prejudice the petitioner, *Strickland v. Washington*, 466 U.S. 668, 687-89, 104 S. Ct. 2052, 2064-69 (1984); *see also Powers v. State*, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987).

Measured by these standards, it is readily apparent that the petitioner failed to carry his burden, and the evidence in the record certainly does not preponderate against the post-conviction court's findings. To those findings, we add a few observations of our own. First, although forcing a defendant to wear jail attire in front of a jury may violate due process, *see Estelle v. Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 1692-93 (1976), the record shows no compulsion attributable either to the trial court or the state. Consequently, the petitioner's complaint cannot be entertained or sustained as an independent due-process violation. Moreover, the issue framed as a due-process violation is subject to waiver because it was not raised on direct appeal. *See* Tenn. Code Ann. § 40-30-206(g) (1997); *Delbert Lee Harris v. State*, No. M2002-00777-CCA-R3-PC (Tenn. Crim. App., Nashville, March 19, 2003)*; Forrest v. State*, 535 S.W.2d 166, 167 (Tenn. Crim. App. 1976).

Nor does the petitioner's complaint fare any better when characterized as ineffective assistance of counsel. The petitioner told trial counsel that family members would be responsible for ensuring that the petitioner had appropriate attire to wear for trial. There is no evidence that trial counsel was ever advised that the jail had refused to accept the clothes.

As for the state's closing argument, we are not necessarily convinced that the state's remarks, viewed in context, were improper, which is a predicate for examining counsel's ineffectiveness in failing to register an objection. To be sure, it is unprofessional conduct for prosecution counsel to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999). However, we are not aware of any iron-clad prohibition against the use of the word "I" in closing argument. The remark, "I don't know," referred to the rhetorical question whether the petitioner had been part of a plan to rob or "take advantage" of Sims. That expression did not address the truth or falsity of any evidence but, rather, the lack of evidence. The second remark, "I know this," was a general comment to the effect that the petitioner and Sims were in the wrong place, at the wrong time; that rather obvious point was neither disputed nor particularly relevant. *See State v. Walter Clyde Rainey, Jr.*, No. M2001-01870-CCA-R3-CD, slip op. at 17-19 (Tenn. Crim. App., Nashville, June 6, 2003) (examples of fair comments using rhetorical questions and "I").

Finally, the post-conviction court's assessment of Smart's impeachment and the petitioner's statements, in terms of prejudice to the petitioner, is supported by the evidence in the record. The prejudice component of an ineffective assistance of counsel claim requires that confidence in the outcome of the trial be undermined -- not lessened, not shaken, but undermined. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Hartman v. State*, 896 S.W.2d, 94, 104 (Tenn. 1995). The petitioner has failed to make the required demonstration.

Consequently, for the foregoing reasons, we affirm the denial of post-conviction relief and the dismissal of the petition.

_____

JAMES CURWOOD WITT, JR., JUDGE