# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### August 3, 2004 Session

## STATE OF TENNESSEE v. RONNIE W. SALMON

**Direct Appeal from the Circuit Court for Hardin County**
**No. 8201      C. Creed McGinley, Judge**

---

**No. W2003-02402-CCA-R3-CD  - Filed October 14, 2004**

---

Following a jury trial, Defendant, Ronnie W. Salmon, was convicted of driving under the influence of an intoxicant, second offense, a Class A misdemeanor.  The trial court sentenced Defendant to eleven months, twenty-nine days, all suspended but sixty days.  Defendant does not appeal his sentence.  Defendant argues on appeal that the evidence was insufficient to support his conviction, that certain remarks made by the prosecutor during closing argument were improper, and that the trial court erred in not granting Defendant a mistrial on the basis of the prosecutor's comments during closing argument.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Curtis F. Hopper, Savannah, Tennessee, for the appellant, Ronnie W. Salmon.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; G. Robert "Gus" Radford, District Attorney General; and John W. Overton, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I.  Background

Officer Joey Pinson testified that he and Officer Johnny Murphy were driving  on Highway 128 when they observed Defendant's vehicle approaching them.  Officer Pinson stated that Defendant's vehicle crossed the highway's center line three or four times as he drove towards the police officers.  Officer Pinson turned around and pulled Defendant over at the stop sign at the intersection of Highway 128 and Highway 57.  Officer Pinson said that he smelled beer on Defendant and asked for his driver's license.  After he checked Defendant's license through NCIC,

Officer Pinson asked Defendant to get out of his car. Office Pinson said that Defendant walked unsteadily toward the back of his car.

Officer Pinson said that he attempted to administer three field sobriety tests to Defendant. The first test required Defendant to recite the alphabet, but Defendant recited certain letters out of order. Defendant's performance improved on his second attempt, but he still missed the proper order for certain letters. Defendant failed to properly follow instructions when he was asked to count the fingers on his hand. Officer Pinson said that Defendant started counting with the wrong finger, and did not do any better on his second attempt. Officer Pinson said that he asked Defendant to walk heel-to-toe, but Defendant refused.

Defendant agreed to take a breathalyzer test after Officers Pinson and Murphy escorted him to the Hardin County Sheriff's Department. Defendant blew into the machine twice, and each time the machine was unable to producing a reading because the sample was "insufficient."

Officer Pinson said that he did not smell beer on Defendant's girlfriend, Debbie Whitaker, but admitted that he never stood close to her. He stated that Ms. Whitaker passed a field sobriety test, and she was allowed to drive Defendant's vehicle away from the scene.

On cross-examination, Officer Pinson estimated that Defendant was driving the speed limit immediately prior to the stop. He admitted that he did not make any written notes concerning Defendant's performance on the field sobriety tests and did not tell Defendant that he could request a blood test. Officer Pinson said that he did not ask Defendant if he had any health problems that would impede his performance on the tests.

Defendant introduced the log used to record the results of breathalyzer tests administered at the Hardin County's Sheriff's Department from May 19, 2002, to September 7, 2002 as a trial exhibit during Officer Pinson's cross-examination. Officer Pinson agreed that the log reflected that two tests, administered immediately prior to Defendant's test on September 7, also recorded that an "insufficient sample" had been submitted. Officer Pinson said that the machine had been tested by the Tennessee Bureau of Investigation about a month prior to Defendant's test and was found to be in working order.

Officer Murphy testified that he observed Defendant's vehicle crossing the center line of the road as Defendant drove toward the police officers. After Defendant was pulled over, Officer Murphy stayed behind Defendant's car because there was a passenger in the car. Officer Murphy said that Ms. Whitaker appeared sober, and he did not administer a field sobriety test to her.

Defendant testified that he had previously had two discs removed from his back and suffered from a bad shoulder which was operated on after his arrest. Defendant also walked with a limp as a result of a prior gunshot wound to his knee.

Defendant said that Ms. Whitaker telephoned him around 9:00 p.m. on the night of his arrest. Ms. Whitaker asked Defendant to pick her up at the bar where she worked because she had too much to drink that evening. Defendant arrived around 10:00 p.m. He and Ms. Whitaker sat and talked for about forty-five minutes, and Defendant drank about one-half of a beer. They left the bar around 11:00 p.m.

Defendant said that he crossed the center line to avoid five or six cars parked by the side of the road. He said that the only field sobriety test he remembered taking that night involved touching his finger to his nose. Defendant said he had difficulty performing the test because of his bad shoulder. Defendant said that he blew into the breathalyzer machine "the best [he] could." He said that he did not know he could request a blood test in lieu of the breathalyzer test. Defendant said that Ms. Whitaker was intoxicated when Officer Pinson stopped him. On cross-examination, Defendant said that he walked "the best [he] could" with his knee injury.

Ms. Whitaker confirmed the times of Defendant's arrival at and departure from the bar where she worked on the night he was arrested. Ms. Whitaker said that she had drunk about seven or eight beers that night and could not drive. Ms. Whitaker said that Defendant only had two or three sips of beer while they talked at the bar. Ms. Whitaker denied that Defendant was driving improperly. She denied that the police officers gave her a field sobriety test before they let her drive Defendant's car away from the scene.

## II. Sufficiency of the Evidence

In considering Defendant's challenge to the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the State in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

Defendant argues that Officer Pinson's failure to remember all of the details of Defendant's sobriety tests rendered the evidence insufficient to support a conviction of driving under the influence. Defendant contends, but cites no authority, that the arresting officer must be able to testify how a driver failed a particular field sobriety test in order to support a finding that he or she was driving under the influence of an intoxicant. Moreover, Defendant points out that there were medical reasons why he might have appeared to walk unsteadily and perform poorly on the field sobriety

tests. Defendant's arguments, however, go to the credibility of the State's witnesses. Obviously, the jury accredited the testimony of Officers Pinson and Murphy, and this Court will not reweigh the evidence.

As applicable here, it is an offense for any person to drive a motor vehicle on a public road while under the influence of an intoxicant. Tenn. Code Ann. § 55-10-401(a)(1). Officer Pinson testified that Defendant was driving poorly, that he smelled alcohol about Defendant, that Defendant walked unsteadily to the rear of his car, and that Defendant failed two field sobriety tests and refused to take a third. Officer Pinson testified that it was his opinion that Defendant was intoxicated when he pulled him over based on Defendant's appearance and conduct during the stop. The fact that Officer Pinson's description of the field sobriety tests was not always clear or that he failed to remember which letters of the alphabet Defendant failed to correctly recite goes to the credibility of his testimony. The evidence is sufficient to support Defendant's conviction of driving under the influence of an intoxicant.

## III. Prosecutorial Misconduct

Defendant argues that the following excerpts from the prosecutor's closing remarks were improper. On the first occasion, the prosecutor commented:

> I do want to draw your attention to one thing and I believe Officer Pinson grabbed it away from me. Exhibit No. 2 in this is this log sheet. This is the log sheet and the yellow on here is stuff that I have put on here. Won't be on yours. This is the copy that I made. This is the log sheet that is kept from people who go in and breath tests are done. Look at the time you see Officer Pinson's name on there and having brought somebody in to test. You'll see that every time he brought somebody in to test that person and the person actually took the test, that that person registered well above the legal limit from toxication [sic], .16, .14, .15, on this one sheet of paper we've got into evidence.

> Now that tells me that there is an officer out there who may not be great at doing paperwork, but recognizes somebody who is impaired when he sees it.

The trial court sustained Defendant's objection to these comments. A few minutes later, the prosecutor observed:

> Now why didn't [the log] show some of the other insufficient samples that day. I didn't even notice this until I was in there eating my sandwich at my desk. The name right above [Defendant's] is Debra Whitaker. Debra Whitaker who on September the 6th was in there blowing on the machine with insufficient sample. Who do you think told [Defendant] when the officers pulled up behind him how he could beat the machine.

The trial court sustained Defendant's objection to this comment and warned the prosecutor that his comment was outside the scope of argument. Defendant did not request, and the trial court did not provide, a curative instruction to the jury.

In general, both the defense and the prosecution should be permitted wide latitude in presenting their arguments to the jury. *State v. Bigbee*, 885 S.W.2d 797, 807 (Tenn. 1994). This latitude, however, is not without limits. "Argument must be temperate, predicated on evidence introduced during the trial, relevant to the issues being tried, and not otherwise improper under the facts or law." *State v. Middlebrooks*, 995 S.W.2d 550, 557 (Tenn. 1999). The trial court has considerable discretion in determining the propriety of closing argument. *See Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995)*, overruled on other grounds by State v. West*, 19 S.W.3d 753, 758 (Tenn. 2000). Even if a prosecutor's comments, however, are found to be improper, whether the misconduct amounts to reversible error depends on whether the comments had a prejudicial effect on the jury. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999).

In determining whether a particular comment is so improper as to be prejudicial, a reviewing court must consider the following five factors:

(1) the conduct complained of in light of the facts and circumstances of the case;
(2) the curative measures undertaken;
(3) the intent of the prosecutor in making the improper remarks;
(4) the cumulative effect of the improper conduct and any other errors in the record; and
(5) the relative strength or weakness of the case.

*State v. Judge*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

In the first set of comments, Defendant argued that the prosecutor improperly vouched for the credibility of Officer Pinson by inferring that because Officer Pinson had arrested other people whose blood alcohol levels were above .10, then Defendant must have also been intoxicated at the time of his arrest even though a successful breathalyzer test was not completed. A prosecutor may properly base his or her argument upon inferences supported by evidence in the record, and he or she is warranted in making an argument to the jury based on the evidence introduced at trial. *See State v. Beasley*, 536 S.W.2d 328, 330 (Tenn. 1976). Defendant introduced the log reflecting the results of breathalyzer tests administered by the Hardin County Sheriff's Department between May 19, 2002 and September 2, 2002, when the test was administered to Defendant, as a trial exhibit during Officer Pinson's cross-examination. The log shows that Officer Pinson was either the operator of the breathalyzer machine or a witness to the administration of the test on five occasions during that time frame. The record supports the prosecutor's observation that of the three times the test was actually administered, the test recorded a blood alcohol reading above the legal limit.

It is improper, however, for a prosecutor to assert his or her personal opinion as to the credibility of a State's witness. *See Thornton*, 10 S.W.3d at 235. "Whether a statement qualifies as misconduct often depends on the specific terminology used." *Id.* Words such as "I submit" or "in

my view" before the prosecutor's challenged observation are not the equivalent of a personalized opinion. *Id.*, citing *United States v. Stulga*, 584 F.2d 142, 147 (6th Cir. 1978). We believe that the prosecutor's qualifying words, "what that tells me," falls into this genre such that his observation is not likely to be viewed as an opinion. *See Coker*, 911 S.W.2d at 368.

The prosecutor's speculation that Ms. Whitaker told Defendant how he could "beat" the breathalyzer test, however, was improper. Even though Ms. Whitaker's name appears in the breathalyzer test log submitted as a trial exhibit, the prosecutor's speculative comment that Ms. Whitaker coached Defendant on how to take the test constituted a personal opinion unsupported by the evidence. *See State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003). Even though the prosecutor's remark was improper, Defendant has failed to show that he was prejudiced by the comment. Defendant did not ask for a curative instruction following the comment. Nonetheless, the prosecutor's comment was brief, and Defendant promptly objected. Based upon Defendant's failure to perform the two field sobriety tests satisfactorily, the police officers' testimony regarding Defendant's demeanor and conduct during the stop, and the record as a whole, we conclude that the error made by the State during closing argument was harmless. *See Thornton*, 10 S.W.3d at 235.

## IV. Failure to Grant a Mistrial

Defendant moved for a mistrial after the jury retired to begin deliberation based on the prosecutor's improper remarks during closing argument. The trial court observed that Defendant had not requested a curative instruction at the time the improper comment was made, but that the trial court had sustained Defendant's objection and "that [was] the end of it." Defendant argues that it was error for the trial court to deny his request for a mistrial.

The determination of whether to grant a mistrial rests within the sound discretion of the trial court, and a reviewing court should not overturn the trial court's decision not to grant a mistrial absent an abuse of discretion. *State v. Smith*, 871 S.W.2d 667, 672 (Tenn. 1994); *State v. Hall*, 947 S.W.2d 181, 184 (Tenn. Crim. App. 1997). The burden of establishing the necessity for mistrial lies with the party seeking the mistrial. *State v. Williams*, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

The trial court found that the prosecutor's comments during closing argument were not so prejudicial as to warrant a mistrial. Defendant promptly objected when the remarks were made, and the prosecutor moved on to other topics. A mistrial should be declared only in the event of a "manifest necessity" that requires such action. *State v. Hall*, 976 S.W.2d 121, 147 (Tenn. 1998). The purpose in granting a mistrial is "to correct damage done to the judicial process when some event has occurred which precludes an impartial verdict." *Williams*, 929 S.W.2d at 388. Based upon our review of the record, we cannot conclude that the trial court abused its discretion in denying Defendant's request for a mistrial. Defendant is not entitled to relief on this issue.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE